# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2737

ALEMAH MCMILLIAN,
Appellant

v.

GEICO INDEMNITY CO.; GEICO GENERAL INSURANCE CO.; GEICO CASUALTY CO.;
GOVERNMENT EMPLOYEES INSURANCE CO.

―――――――――――――――――――

On Appeal from the U.S. District Court, D.N.J.
Judge Edward S. Kiel, No. 1:23-cv-01671

Before: PHIPPS, FREEMAN, and BOVE, *Circuit Judges*
Submitted: May 28, 2026; Filed: July 23, 2026

―――――――――――――――――――

NONPRECEDENTIAL OPINION[*]

PHIPPS, *Circuit Judge*.

In 1983, New Jersey enacted the Automobile Insurance Freedom of Choice and Cost Containment Act, which provided several consumer protections associated with the purchase of automobile insurance. New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act, ch. 362, 1983 N.J. Laws 1538–64 (codified as amended in scattered sections of N.J. Stat. Ann. §§ 17, 39). One of those legislative protections required insurance companies to provide applicants for insurance with coverage selection forms containing information about the ranges of premium rate credit or dollar savings for each policy offered:

> No new automobile insurance policy shall be issued . . . unless the application for the policy is accompanied by a written notice identifying and containing a . . . coverage selection form.

\* \* \*

―――――――――――――――

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

> The coverage selection form shall identify the range of premium rate credit or dollar savings, or both . . . .

N.J. Stat. Ann. § 39:6A-23(a). Another of the protections required applicants to sign the coverage selection form and return it to the insurer:

> The applicant shall indicate the options elected on the coverage selection form which shall be signed and returned to the insurer.

*Id.*; *see also* N.J. Admin. Code § 11:3-15.7(a) ("For all new policies, an insurer or an insurance producer shall receive a Coverage Selection Form signed by the named insured and indicating the prospective insured's coverage choices.").

Although those provisions have not been amended, in the intervening decades, insurance companies began to sell automobile insurance online. In 2005, New Jersey's Commissioner of Banking and Insurance promulgated a regulation related to the online purchase of automobile insurance, *see* 37 N.J. Reg. 775(a) (Mar. 7, 2005) (codified at N.J. Admin. Code § 11:3-15.4(a)(2)), pursuant to her statutory authority, *see* N.J. Stat. Ann. §§ 17:1-8.1, 17:1-15(e). By the terms of that regulation, which is subject to a rebuttable presumption of validity under principles of New Jersey administrative law,[1] the requirement to provide a coverage selection form is satisfied for an "application for . . . an insurance policy . . . made via the Internet" if the coverage selection form is "readily available to the applicant . . . on the insurer's website." N.J. Admin. Code § 11:3-15.4(a)(2).

In this case, a citizen of New Jersey who purchased automobile insurance online sued the insurance company that issued her policy for not complying with the notice and

---

[1] *See Reilly v. AAA Mid-Atl. Ins. Co. of N.J.*, 946 A.2d 564, 571 (N.J. 2008) (holding that "[r]egulations adopted by an agency pursuant to a legislative mandate are presumed to be valid" and according "defer[rence] to an agency's interpretation of a statute" unless that interpretation "is plainly unreasonable[,] . . . is contrary to the statutory language, or . . . undermines the Legislature's intent" in a case involving regulations and an adjudication by New Jersey's Commissioner of Banking and Insurance (internal quotation marks omitted)).

2

signature-receipt requirements for a coverage selection form. After discovery, the insurance company moved for summary judgment, and the District Court granted that motion. In this appeal of that final order, we will, on *de novo* review, affirm the judgment of the District Court for the reasons below.

## BACKGROUND

On the morning of July 23, 2015, then 21-year-old Alemah McMillian, a New Jersey citizen, applied for automobile insurance for her Honda Civic from Government Employees Insurance Company, commonly referred to as 'GEICO.' McMillian submitted that application online using GEICO's website.

As part of that application, McMillian had to select the amount of personal injury protection, or 'PIP Coverage,' that she wanted. By statute, New Jersey sets a default amount for PIP Coverage of $250,000, but an applicant may elect one of four lower amounts, down to $15,000. *See* N.J. Stat. Ann. § 39:6A-4.3(e). On the same webpage that McMillian selected the $15,000 option for her PIP Coverage, GEICO provided a link to a coverage selection form, which, if clicked, produced a coverage selection form that included a range of premium rate credits.

After McMillian completed the online quote process, GEICO's website directed her to an electronic signature interface. There, McMillian "clicked on a box to process [her] request with a general e-signature." McMillian Decl. ¶ 6 (JA65). And an electronic version of the resultant coverage selection form indicates a selection of $15,000 in PIP Coverage, contains information about the premium rate credits, and displays McMillian's electronic signature dated July 23, 2015.

3

Over the next six years, McMillian renewed her automobile insurance policy with GEICO at least eight times without changing it. She did so online, each time receiving a declarations page that listed the $15,000 coverage limit.

On February 16, 2021, McMillian was injured in a car accident, and the medical expenses she incurred exceeded $15,000. Consistent with McMillian's $15,000 PIP Coverage, GEICO did not cover her personal injury expenses above $15,000.

In January 2023, McMillian filed a four-count putative class action against GEICO and three of its affiliates in Superior Court in Middlesex County, New Jersey. One of her claims alleged that GEICO and three of its affiliates, none of which are citizens of New Jersey, had violated the provisions of the Automobile Insurance Freedom of Choice and Cost Containment Act requiring notice and signature receipt of coverage selection forms.[2] *See* N.J. Stat. Ann. § 39:6A-23(a). On assertions that the putative class would contain at least 100 members, that both minimal and complete diversity existed between the parties, and that the amount in controversy exceeded $5 million, GEICO and its affiliates removed the case to the District Court under the Class Action Fairness Act, *see* 28 U.S.C. §§ 1332(d), 1441(a), 1446, 1453, as well as on the basis of diversity jurisdiction, *see id.* §§ 1332(a), 1441(a), 1446.

As the case proceeded, two of GEICO's affiliates were dismissed, as was one of the four claims. After discovery, but before class certification, GEICO and its remaining

---

[2] New Jersey's Automobile Insurance Freedom of Choice and Cost Containment Act does not contain an express private cause of action, so McMillian's claims for violations of the Act rest on the premise that the Act implies a private cause of action. Although McMillian offers nothing to substantiate that premise, GEICO does not contest it. Nothing in this opinion should be construed as addressing that issue. *Cf. generally Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138–41 (3d Cir. 2024) (articulating the standard that New Jersey uses to imply a private cause of action from a statute).

affiliate, GEICO Indemnity Company, moved for summary judgment against McMillian, which the District Court entered in their favor as to the remaining three counts.

Through a timely notice of appeal, McMillian invoked this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A). She now challenges the entry of summary judgment only as to her claim premised on violations of the Automobile Insurance Freedom of Choice and Cost Containment Act's notice and signature requirements for coverage selection forms.[3] *See* N.J. Stat. Ann. § 39:6A-23(a); *cf.* N.J. Admin. Code § 11:3-15.4(a)(2).

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As explained by the Supreme Court, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, a party moving for

---

[3] In a single sentence of her opening appellate brief, McMillian argues that GEICO violated the Automobile Insurance Freedom of Choice and Cost Containment Act by not providing her with a copy of a Buyer's Guide through its online portal when she was purchasing insurance. *See* N.J. Stat. Ann. § 39:6A-23(a); N.J. Admin. Code § 11:3-15.4(a). A single sentence is not typically enough to present an argument on appeal. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) (recognizing the practice of "refus[ing] to consider ill-developed arguments"); *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006) ("[P]assing and conclusory statements do not preserve an issue for appeal."). But even if that argument were sufficiently presented, it would amount to a constructive amendment of McMillian's complaint, which does not allege a claim related to the Buyer's Guide. To the contrary, in quoting the "pertinent part[s]" of the statute, her complaint includes only the passages related to coverage selection forms, not those provisions relating to the obligation to provide a Buyer's Guide, Compl. ¶ 13 (JA43–44), and her complaint never otherwise mentions the Buyer's Guide requirement. And it is not clear under this Court's caselaw that a complaint can be constructively amended at summary judgment, *cf. Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 327 n.7 (3d Cir. 2012) (noting the circuit split regarding whether Federal Rule of Civil Procedure 15(b) applies at the summary-judgment stage and declining to address the issue), so if nothing else, McMillian's argument is incomplete in not addressing that necessary predicate.

summary judgment may succeed by demonstrating that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case . . . *on which that party will bear the burden of proof at trial*." *Massey v. Borough of Bergenfield*, 169 F.4th 188, 193 (3d Cir. 2026) (alteration in original) (quoting *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). Here, for McMillian to prevail at trial, she must prove two negatives: first, that before she purchased the automobile insurance policy, a coverage selection form with the premium rate credit information was not "readily available" from GEICO's website, N.J. Admin. Code § 11:3-15.4(a)(2), and second, that she did not electronically sign such a coverage selection form.

To show that she could prove that she did not receive the requisite coverage selection form, McMillian submitted a declaration under penalty of perjury. *See* 28 U.S.C. § 1746; *see also* 18 U.S.C. § 1621(2). There, she stated that she had not seen the coverage selection form until after her accident. But that by itself does not meet the legal standard, which required GEICO to make the form "readily available on [its] website." N.J. Admin. Code § 11:3-15.4(a)(2). And in a deposition, a Senior Underwriter for GEICO testified that the online link to the coverage selection form provided "a range of percentage reductions in PIP premium." Wagner Dep. 187:6–13 (JA1454). In her appellate briefing, McMillian attempts to undermine the Senior Underwriter's testimony by describing it as "the sole evidence" and "a small piece of [his] testimony" and by relying on ambiguous portions of his other testimony. Opening Br. 9. But that is not enough to create a genuine dispute of material fact, much less to allow a jury to conclude that a coverage selection form with the premium rate credit information was not readily available on GEICO's website when McMillian was shopping for car insurance.

6

To succeed on her signature-receipt argument at trial, McMillian would have to establish that she did not electronically sign a coverage selection form. But in discovery, GEICO produced a copy of a coverage selection form containing her electronic signature, and in her declaration, McMillian admitted to clicking on a signature box on the webpage. That leaves McMillian with nothing but feeble arguments for the factual proposition that she did not electronically sign the coverage selection form.[4] And that is not enough to survive summary judgment. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (recognizing that a "scintilla of evidence" is not enough to avoid summary judgment (quoting *Anderson*, 477 U.S. at 252)).

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[4] For instance, McMillian argues that the event logs from her online insurance application suggest that she never electronically signed a coverage selection form. But a declaration under penalty of perjury from one of GEICO's engineers with knowledge of the electronic signature process explained that those log entries were fully consistent with system refreshes associated with a customer's logging out after purchasing insurance. Yurko Decl. ¶ 9 (JA1443–44) ("The Event Log entries Ms. McMillian refers to . . . do not mean that Ms. McMillian's e-signature process had not been completed. Rather, when a customer would be logged out of the InSite system after completing an e-signature process and then log back in shortly thereafter, the part of the system that would reflect the event referenced by Ms. McMillian would sometimes not refresh fast enough to recognize that the process had been completed. This is something that occurred regularly when I worked in customer service, when I would often assist customers on the phone while they completed their e-signature process. We would tell them to wait for fifteen minutes or more before trying to log back into the system. The Event Log for the McMillian Policy shows multiple logouts and logins surrounding the events . . . which all occurred shortly after she completed the e-signature process.").